GOUVERNEUR and others *vs.* TITUS, administratrix.

An error was made in a deed from a father to his son, by describing the
lands as being in the North-*West* instead of the North-*East* corner.
The son conveyed the property absolutely to creditors of the father in
satisfaction of their debt and the error was continued in the deed to
them. The defendant, a judgment creditor of the father, persevered in
a levy upon the land in the North-East corner, after being notified of
the error: HELD, that the judgment did not attach upon the land thus
conveyed: The defendant was perpetually enjoined, and costs were
given against her.

THE complainants filed their bill to be relieved from the *November* 19.
consequences of an alleged error or mistake in a deed of 1832.
three thousand one hundred and nine acres of land in Ma- *Deed.*
comb's purchase, Franklin county. They prayed to be quiet- *Error in de-*
ed in their title; and that the defendant might be perpetually *scription.*
*Judgment cre-*
enjoined from enforcing a certain judgment against the land *ditor.*
and from otherwise disturbing the title.

The following summary of the facts presents the questions
which were considered by the court.

Abijah Hammond was largely indebted to the complainants.
On the fourteenth day of May, one thousand eight hundred and
twenty-two, he gave a mortgage, for their security, upon the
westerly part of Township No. 8, of Great Tract No. 1, of
Macomb's purchase, bounded on the east by a line drawn
North and South parallel to the West boundary line of the
Township and so as to include ten thousand acres.

Besides the ten thousand acres then mortgaged, Mr. Hammond was the owner of other tracts of land; and, among them, of three thousand one hundred and nine acres in the north-*east* corner of the same township.

On the eighth day of August one thousand eight hundred and twenty-seven, he conveyed to his son Charles H. Hammond in fee simple (with other lands) the above parcel of three thousand one hundred and nine acres; and described it in the deed as situated in the north *west* corner of the township.

Six days after the conveyance, the defendant, Mrs. Mary Titus, as administratrix of her deceased husband's estate, recovered a judgment in the Supreme Court against Abijah Hammond, for sixty thousand dollars of debt.

Afterwards, the complainants proceeded to foreclose their mortgage of the ten thousand acres; and, upon a sale under a decree of this court, on the thirtieth day of May one thousand eight hundred and nineteen, they bought in the lands for one thousand six hundred and fifty dollars,—and which was far less than the amount of their debt.

Apprehending a deficiency, they had previously applied to the mortgagor for additional security or satisfaction; and a negociation was opened with Charles H. Hammond (who held the lands conveyed to him by his father). It resulted in an agreement between him and the complainants, namely, that he would convey to them the parcel of three thousand one hundred and nine acres which, with the ten thousand acres already mortgaged, were to be taken in full satisfaction of the mortgage debt; and that the complainants would release the mortgagor, his father, from the balance or deficiency which might remain due after the sale of the ten thousand acres under the decree.

In pursuance of this agreement and for the purpose of carrying it into effect, Charles H. Hammond executed a conveyance to the complainants, dated the thirtieth day of May one thousand eight hundred and twenty-nine, thereby intending to convey the parcel of three thousand one hundred and nine acres: taking his description of it by copying the description in the deed from his father and referring to such deed.

After the execution and delivery of the deed to the complainants, it was discovered that the three thousand one hundred and nine acre-tract was erroneously described in both deeds, by its being stated that the same was lying in the north-*west* corner of the township. when, in fact, it was situated in the north-*east* corner. The whole of the north-*west* corner was actually comprised in the ten thousand acres previously mortgaged and to which the complainants had acquired an absolute title under the foreclosure and sale.

The defendant, supposing the lands in the north-*east* corner still to belong to Abijah Hammond, caused an execution, by virtue of her judgment to be levied upon those lands and the tract of three thousand one hundred and nine acres to be sold by the Sheriff; and she became the purchaser. Mrs. Titus took the usual Sheriff's certificate, intending thereby to acquire a title; and she now insisted upon a title in opposition to the respective conveyances to the younger Mr. Hammond and to the complainants.

In order that there might be no difficulty between the grantors and the complainants about reforming or correcting the alledged misdescription or error in the deeds, the grantors had voluntarily executed a deed of confirmation to the complainants for the tract as lying in the north-*east* corner. Hence it became unnecessary to make them parties to this suit. The deed of confirmation, however, was not executed until after the lands had been sold under the defendant's execution; and the case presented the question whether, upon the footing of a right to have the mistake corrected originally, the complainants could be quieted in their title against the legal effect and operation of the judgment?

Mr. *W. H. Harison* and Mr. *T. L. Ogden*, for the complainants.

Mr. *C. D. Sackett* and Mr. *S. A. Foote*, for the defendant.

THE VICE-CHANCELLOR. The proofs in this cause establish the fact, beyond all doubt, that the three thousand one

*1832.*

GOUVERNEUR
*v.*
TITUS.

*January 28, 1833.*

hundred and nine acres intended to be conveyed were lands situated in the north-*east* corner of the township mentioned in the pleadings ; and that north-*west* was written in the deeds instead of north-east, through mere inadvertence or mistake— neither of the parties to either of the deeds intending to convey lands in the north-west corner, as they were already covered for more than their value by the complainants mortgage.

It is a case in which this court would interfere as between the immediate parties to correct the mistake.

But, it is said, that where the rights of a creditor intervene, as in this instance, and under circumstances like the present, the court will not interfere to disturb them by correcting or reforming the deed.

The first circumstance which has been urged against any equitable interference is this : that the complainants have not proved a valuable consideration was given for the deed in which the mistake arises ; and, being a conveyance made by a party who was largely indebted at the time and against whom a judgment was about to be recovered, therefore it was necessary to show the consideration to have been such as would uphold the deed against the judgment creditor. This idea proceeds upon the notion of fraud in the transaction and if it were allowed and could be made out, it would not only prevent this court from interfering to correct the deed, but warrant the setting of it aside. But the defendant is not at liberty to raise the objection. She has accepted, from Charles H. Hammond, a deed of some of the lands included in the conveyance from his father, in satisfaction of her debt and judgment, without prejudice, however, to her claim upon the three thousand one hundred and nine acres, which is reserved to her, and she has stipulated that, in any suit involving the title thereto, the deed of the eighth of August one thousand eight hundred and twenty seven, in regard to the consideration, shall not be impeached or called in question.

The consideration expressed in the deed is two thousand dollars ; and after the above stipulation, this amount is to be taken as the true consideration and the grantee, Charles H. Hammond, must be considered a *bona fide* purchaser.

The next objection is, that the deed from Charles H. Hammond to the complainants does not place them upon the footing of absolute purchasers for a consideration paid for the purchase—the deed being taken to secure a pre-existing debt—that, although they may have agreed to accept the lands in payment and satisfaction of the balance of their debt, they have not actually released the debtor; and are, consequently, creditors still. And one creditor, it is contended, cannot correct a mistake against another creditor so as to take from the latter any legal advantage, in a struggle to obtain or secure the payment of their respective debts. In relation to the first part of this objection, I am satisfied, upon looking at all the facts and circumstances of the transaction, that the complainants are to be regarded as purchasers of the three thousand one hundred and nine acres, and with their debt extinguished. It was not a conveyance by the debtor as a security for the debt: but it was one made by a third person in whom the legal title to the lands was vested, and made for the purpose of effecting a discharge of that debt. The complainants received it in payment and satisfaction; and the acceptance of the deed operated to extinguish the debt, at the same time that the relinquishment by the creditor served as a valuable consideration for the deed. A technical release of the debt was, therefore, not necessary.

Besides, the recitals in the deed of confirmation show, that the previous conveyance was given in satisfaction, so that the debt no longer existed. After this, the complainants could assert no remedy for payment against the debtor. They stand, consequently, as purchasers for a valuable consideration, although the consideration consisted in cancelling a precedent debt. They agreed, in good faith, to cancel it; and they did so upon the strength of a conveyance of the lands and founded, as the parties to the agreement supposed, upon a perfect and unincumbered title. It is true, they may be chargeable with notice of the defendant's judgment against the first grantor, but, knowing the deed was anterior to the judgment and that it was intended to convey lands not comprised in the

mortgage, and not being aware of the mistake in the description or location as given in the deed, the complainants cannot be chargeable with notice of the apparent lien, at the time they entered into the arrangement and accepted the conveyance from Charles H. Hammond. They acted with him as if there was no such lien, in ignorance of it, yet with perfect good faith. If Charles H. Hammond acquired a title to the lands as a *bona fide* purchaser which could not be impaired by the subsequently acquired judgment—and of this I think there can be no doubt, as can be gathered from *Burgh* v. *Francis, Finch's R.* 28, and *Finch* v. *Earl of Winchelsea*, 1, *P. Wms.* 277,—then, the complainants, as purchasers under him, are entitled to the same protection: *De Remer* v. *De Cantillon*, 4, *J. C. R.* 85.

All the interest of Abijah Hammond passed by the deed to his son, notwithstanding the misdescription of the lands conveyed: for the deed is to have effect according to its intent. There was nothing remaining in him when the judgment was obtained upon which it could operate or become a charge. *Ells* v. *Tousley*, 1, *Paige's C. R.* 280 ; and to correct the deed in favor of the purchaser and hold it effectual as a conveyance of the lands actually intended to be conveyed, will not take any thing from the judgment creditor.

In this view of the case, it appears perfectly plain, that the complainants are entitled to protection against the consequences of the mistake and misdescription in the deeds. This, I am satisfied, is the correct view to be taken of the subject.

It becomes unnecessary to consider what would be the rights of the parties, if the other view of the case, contended for by the counsel for the defendants, were adopted, namely, that the complainants accepted the deed from Charles H. Hammond as security for their debt, that it still subsists, and that, like the defendant, they are only creditors seeking to obtain a partial payment or satisfaction of their debt. Until an answer to such a point is required, I shall forbear to express any opinion upon it.

I am satisfied the complainants are entitled to a decree exonerating the three thousand one hundred and nine acres from any supposed lien or incumbrance of the judgment and perpe-

tually enjoining the defendant from taking any measures to disturb the title by virtue of her purchase at the Sheriff's sale or otherwise.

Under the circumstances of the case and as costs are asked for against the defendant, I shall allow them to the complainants. They made known their rights to her and requested her, before they filed the bill, to release the lands from the judgment. The defendant refused to do this and preferred to litigate the matter. She must pay the costs of the suit to be taxed: *Ells* v. *Tousley, ante.* Nevertheless, she stands in a representative capacity, and perhaps could not safely execute a release, and inasmuch as it appears she has not acted otherwise than with a view to benefit the estate she represents, the costs must be charged upon that estate and not against her personally. This was done in *Moses* v. *Murgatroyd,* 1, *J. C. R.* 473.